```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**QUAUNTEL SAUNDERS,**

      Plaintiff,

v.                              Civil Action No. 2:18-cv-01514

**CO II KUMMER and LT. BAISDEN,**

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is defendants CO II John Kummer and Lt. Jimmie Baisden's motion for summary judgment, filed December 8, 2020. ECF No. 51.

## I.  Background

Plaintiff Quauntel Saunders, proceeding <u>pro se</u>, filed this action, using the United States District Court for the Southern District of West Virginia's form complaint for 42 U.S.C. § 1983 claims, on December 13, 2018.  ECF No. 2. Saunders, an inmate at Mount Olive Correctional Complex, alleges in his complaint that Kummer, accompanied by CO I David Ewing, sprayed him with "phantom (clear out)," a type of pepper spray, on February 27, 2017 "for no reason at all."  <u>Id.</u> at ¶ IV. Saunders claims that contrary to the directions of medical

staff, Kummer and Lt. Baisden did not allow him to shower and wash off the pepper spray for three days after placing him back in the pod where the assault allegedly occurred. Id. He states that he developed skin problems from the pepper spray and that defendant Dr. Charles Lye refused to treat the problems. Id. Saunders initially asserted unspecified claims against Kummer, Ewing, Baisden, and Lye, which he later clarified as claims alleging cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Id.; ECF No. 21, at 1.

The matter was referred to United States Magistrate Judge Dwane L. Tinsley pursuant to 28 U.S.C. § 636(b)(1)(B). After all four defendants moved to dismiss, the magistrate judge issued a Proposed Findings & Recommendation ("PF&R") on December 18, 2019, recommending that the claims against Kummer and Baisden be allowed to proceed while the claims against Ewing and Lye be dismissed. ECF No. 31. As relevant to the motion for summary judgment, the magistrate judge considered whether the claims alleged against the defendants should be dismissed for failure to exhaust under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Id. at 5-13. The magistrate judge determined that although the grievances concerning the specific allegations against Kummer and Baisden (Nos.

17-MOCC-Q2-64 (February 28, 2017) and 17-MOCC-Q2-81 (March 2, 2017)) did not document complete administrative appeals to the Commissioner of the West Virginia Division of Corrections and Rehabilitation ("Commissioner"), several other grievances, including Nos. 17-MOCC-Q2-98 (March 10, 2017) and 17-MOCC-Q2-141 (March 29, 2017), complain that the plaintiff did not receive a response from the warden on one of these prior grievances, No. 17-MOCC-Q2-64. Id. at 10-11. Further, the magistrate judge noted that Saunders alleged in grievance No. 17-MOCC-Q2-141 that prison staff had tampered with his grievance mail. Id. at 11. Inasmuch as it was not clear at the motion to dismiss stage whether administrative remedies were "available" to Saunders, the magistrate judge concluded that the case against Kummer and Baisden should not be dismissed without further factual development. Id. at 11-12. The magistrate judge also found that the grievances at issue did not address the conduct of Ewing or Lye and recommended that the claims against them be dismissed. Id. at 12-13.

The court adopted the PF&R on January 15, 2020, dismissing the claims alleged against Ewing and Lye. ECF No. 32. Counsel entered an appearance for Saunders on March 26, 2020. ECF No. 33.

Kummer and Baisden subsequently filed the pending motion for summary judgment on December 8, 2020, citing a failure to exhaust by Saunders as grounds for dismissal of the claims alleged against them. ECF No. 51. The exhaustion issue largely turns on administrative grievances filed by the defendant, of which seventeen appear in the record. Some are entirely unrelated to this case, but several grievances warrant specific discission.

First, grievance No. 17-MOCC-Q2-64 (February 28, 2017) alleges as follows:

> On 2-27-17 @ 5:30 pm I was maced by CO II Kummer for no reason. He ignored the actual kickers and scouted the pod for someone he wouldn't have any backlash from. I was a victim of the OC [pepper spray] due to my asthma issues. I want someone reprimanded and this whole issue reviewed pending a <u>civil</u> <u>suit</u>.

ECF No. 51-1 (emphasis in original). The unit manager responded to the grievance on March 1, 2017, stating that "[a]ccording to 3 officer witnesses, <u>You</u> kicked your door in front of Officer Kummer which forced him to use force to ensure your safety and to ensure st[ate] property was not destroyed." <u>Id.</u> (emphasis in original). The sections of the grievance form designated for appeals to the warden and Commissioner are left blank on No. 17-MOCC-Q2-64. <u>Id.</u>

Grievance No. 17-MOCC-Q2-81, dated March 2, 2017, states as follows:

> I got mased on February 27, 2016 [sic] around 5:30 pm for no reason. I was left in my cell for 30-45 minute[s] with out air. I have several burn marks on my visible [and] private area[s] because of this. I keep burning an[d] my burns are getting worse because I stil[l] haven't been in the shower. It[']s been over 72 hours since I been mased. And I still haven't been able to wash this mase off me an[d] clean my burn marks. Not once was I offered a shower an[d] I ask[ed] several times. I want a thorough investigation done on this use of force due to my civil suit I plain [sic] to file.

ECF NO. 51-2. The unit manager responded on March 2, 2017, by stating that "[a]ll uses of force are looked into and reviewed for any wrongdoing." Id. Saunders initialed the form's space for "Appealed to Warden/Administrator." Id. The warden responded on March 9, 2017, "You were decontaminated and evaluated by medical staff afterward. If you have a medical issue, submit an Inmate Health Services Request form." Id. The space for initialing an appeal to the Commissioner is left blank, and no response to an appeal from the Commissioner is indicated on grievance No. 17-MOCC-Q2-81. Id.

In grievance No. 17-MOCC-Q2-98, dated March 10, 2017, Saunders wrote that:

> I sent two grievance appealed to the warden on the same day. I receive [sic] one back and not the important one that I need to send to my lawyer. I have a copy of it. But I want another copy because I

5

> don't think it was sent to the warden because it has something to do with my civil suit. I want my grievance sent to the warden or receive [sic] it back so I can send it to the Commissioner so I can get it to my lawyer.

ECF No. 51-3. The unit manager responded on March 13, 2017, "The Warden has 30 days to answer your appeal." Id. Saunders initialed the space designated for an appeal to the warden and dated the appeal March 15, 2017. Id. The warden responded on March 27, 2017, stating, "The only grievance we received from you was 17-MOCC-Q2-81. We received it on 3-6-17 and a response was given and the grievance was mailed to you on 3-9-17." Id. Saunders did not initial the space designated for an appeal to the Commissioner, and grievance No. 17-MOCC-Q2-98 contains no response from the Commissioner to any appeal.

On March 29, 2017, Saunders filed grievance No. 17-MOCC-Q2-141. ECF No. 51-4. This grievance complains:

> The Warden said that he never got my 17-MOCC-Q2-64 but he did received [sic] my 17-MOCC-Q2-[81] . . . they were sent out my door at the same time . . . . I think someone [is] tampering with the mail an[d] grievance. [T]his [is] not the first time this has happen[ed]. I still have my copy but I'm scar [illegible, presumed to be "scared"] to give it up to any one because that might come up missing . . . . I want to know why my grievance wasn't sent to the Warden. I want the unlawful action of the Correctional Officers took care of and I want my grievance to be sent and answer[ed] by the Warden so I can follow up with my civil suit . . . .

6

Id. The unit manager responded: "I do not have anything to do with the mail. If you sent it to the Warden he should have gotten it. Check your paperwork and make sure you for sure sent it." Id. Saunders did not initial the spaces for appeals to the warden or Commissioner, and no responses from those officials appear on grievance No. 17-MOCC-Q2-141. Id.

Most of the remaining relevant grievances similarly complain of mail tampering, Saunders' assertion that the warden and Commissioner did not receive the earlier grievances, or Saunders' belief that certain grievances had gone missing. Of these grievances, grievance Nos. 18-MOCC-Q2-299 (April 4, 2018), 18-MOCC-Q2-302 (April 8, 2018), 18-MOCC-315 (April 10, 2018), 18-MOCC-Q2-320 (April 10, 2018), 18-MOCC-Q2-385 (April 25, 2018), and 18-MOCC-Q2-387 (April 25, 2018) all include appeal responses from the warden and the Commissioner. ECF No. 21-1. Grievance Nos. 18-MOCC-Q2-270 (March 28, 2018) and 18-MOCC-Q2-286 (March 30, 2018) include responses from the Commissioner but not the warden. Id.

One other grievance, No. 18-MOCC-Q2-321 (April 10, 2018), states as follows:

> I was sprayed on Feb. 27th 2017 by CO II Kummer. I was left in my cell for 45 m[illegible, presumed to be "minutes."] Then wasn't able to take a shower for 3 days[. D]ue to all of that my skin breaks out if I use

7

> certain soap like CCB & Irish Spring/I also have dry skin because of that.

ECF No. 21-1, at 6. The unit manager responded, "You may order whatever is approved at the commissary for your level." Id. Saunders initialed an appeal to the warden on April 18, 2018, who responded on April 25, 2018, "Untimely. Issue allegedly occurred in February 2017." Id. Saunders initialed an undated appeal to the Commissioner, who affirmed the warden's denial of the grievance. Id.

In support of their position for summary judgment, the defendants offer the following requests for admission and accompanying responses by the plaintiff:

> 6. Please admit that you have no evidence that your mail was tampered with:
>
> RESPONSE: No, I don't have any evidence.
>
> 7. Please admit that you have no evidence that your mail was tampered with by correctional staff.
>
> RESPONSE: No, I don't have any evidence.

ECF No. 51-5, at 2. In response to the motion for summary judgment, Saunders has provided an affidavit, stating, in relevant part:

> 2. The defendants have filed a motion for summary judgment based on the grounds that I did not exhaust my administrative remedies regarding my claims against Baisden and Kummer;

8

       3.    I state under oath that I did. I appealed multiple grievances to the Commissioner in Charleston, West Virginia in regard to the excessive force/unlawful conduct carried out by Defendant Kummer and Baisden;

       4.    I complained both verbally and in writing through subsequent grievances that correctional officers or other staff were interfering with my mail;

       5.    I did everything within my ability to exhaust my administrative remedies. I even filed new grievances stating that my mail and grievances were being interfered with . . . .

ECF No. 55-1.

## II. Legal Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The parties disagree as to the court's precise role in resolving the exhaustion issue. The defendants claim that exhaustion of administrative remedies under the PLRA is a matter of law to be decided by the court. ECF No. 52, at 8 (citing Creel v. Hudson, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. Sept. 12, 2017)). Saunders contends that notwithstanding his substantive arguments concerning exhaustion, the evidence on exhaustion presents triable issues of fact to be decided by a jury. ECF No. 55, at 6-7 (collecting cases).

As the defendants note, this court has found that exhaustion under the PLRA is a question of law to be determined by the court. Creel, 2017 WL 4004579, at *3 (citing Lee v Willey, 789 F.3d 673, 678 (6th Cir. 2015); Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010)); see also Russell v. Butcher, No. 2:19-cv-00918, 2020 WL 4043080, at *5 (S.D. W. Va. July 17, 2020); Murray v. Matheney, No. 2:13-cv-15798, 2017 WL 4684746, at *2 (S.D. W. Va. Oct. 18, 2017). Relatedly, the Fourth Circuit has commented that "[j]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." Woodhouse v. Duncan, 741 F. App'x 177, 178 (4th Cir. 2018) (quoting Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013)). Thus, the court will resolve all factual and legal issues concerning exhaustion.

### III. Analysis

The defendants argue that the plaintiff did not exhaust the two grievances that substantively describe the allegations against Kummer and Baisden, grievance Nos. 17-MOCC-Q2-64 (February 28, 2017) and 17-MOCC-Q2-81 (March 2, 2017), inasmuch as they were not appealed to the Commissioner as required by West Virginia law.  ECF No. 52, at 9.  The defendants acknowledge that Saunders maintained in later grievances that prison personnel had tampered with his mail but point out that he actually conceded in grievance Nos. 17-MOCC-Q2-98 and 17-MOCC-Q2-141 that the warden had received an appeal of grievance No. 17-MOCC-Q2-81, which suggests that personnel did not tamper with the mail.  Id.  Further, they contend that Saunders has admitted in his response to the requests for admission that he has no evidence of mail tampering.  Id.

Saunders responds that he was not required to exhaust administrative remedies under the PLRA inasmuch as such remedies were not "available" to him.  ECF No. 55, at 3-5.  He argues that the subsequent grievances, his affidavit, and his pro se pleadings establish that prison officials failed to provide him with an available administrative remedy.  Id. at 5.  He also contends that grievance Nos. 18-MOCC-Q2-302 (April 8, 2018) and

11

18-MOCC-Q2-320 (April 10, 2018) addressed the earlier filed grievances and were accepted by the Commissioner, which "[a]rguably . . . demonstrate[s] that plaintiff did exhaust his administrative remedies or at the very least constructively exhausted his remedies when plaintiff's grievances finally completed their journey through the system." Id.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The language of the statute imposes a mandatory exhaustion requirement on prisoners with "one significant qualifier: the remedies must indeed be 'available' to the prisoner." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016). The Ross Court explained that such remedies may be unavailable where "an administrative procedure . . . operates as a simple dead end," "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-61.

12

Generally, failure to exhaust under the PLRA is an affirmative defense that must be proved by a defendant. See Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199 (2007); Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005)). However, "in order to show that a grievance procedure [is] not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." Graham v. Gentry, 431 F. App'x 660, 663 (4th Cir. 2011) (citing Moore, 517 F.3d at 725); accord Creel, 2017 WL 4004579, at *4 ("Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff.")

Under the West Virginia Prison Litigation Reform Act, the state's equivalent of the PLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). Further,

> [a]n ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's

> designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

The procedures for filing and exhausting inmate grievances are provided for by the Commissioner's Policy Directive 335.00 (August 1, 2013).[1] The Policy Directive holds that:

> [a]n inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. The unit manager is required to return an answer to the grievance back to the inmate within five days. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review. Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." "The Warden/Administrator shall respond to the appeal ... within five (5) days." Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed. The

---

[1] The court notes that counsel for the defendants suggest that W. Va. C.S.R. § 90-9-3, et seq., provides the applicable grievance procedures. ECF No. 52, at 8. The court further notes, as United States District Judge Joseph R. Goodwin did in a case with the same counsel, Russell v. Butcher, No. 2:19-cv-00918, 2020 WL 4043080, at *6 n. 3 (S.D. W. Va. July 17, 2020), that Section 90 of the West Virginia Code of State Rules was repealed in 2016.

>Commissioner is allotted ten days to respond to the appeal.

Miller v. Rubenstein, No. 2:16-cv-05637, 2018 WL 736044, at *5-6 (S.D. W. Va. Feb. 6, 2018) (quoting Policy Directive 335.00, at 5-9).

The court first turns to the plaintiff's assertion that the Commissioner's acceptance of grievance Nos. 18-MOCC-Q2-302 (April 8, 2018) and 18-MOCC-Q2-320 (April 10, 2018) arguably constitutes exhaustion or constructive exhaustion of administrative remedies. In their reply, the defendants assert that constructive exhaustion is inconsistent with the Supreme Court's mandatory exhaustion rule and note, correctly, that the plaintiff cites no law in support of his arguments on this issue. ECF No. 56, at 9-11.

Notwithstanding these cogent points, the court observes that grievance Nos. 18-MOCC-Q2-302 and 18-MOCC-Q2-320 concern vague allegations about missing grievances and mail tampering. Unlike grievance Nos. 17-MOCC-Q2-64 and 17-MOCC-Q2-81, however, they do not discuss the underlying facts surrounding the allegations made against Kummer and Baisden in this case, i.e., the unjustified use of pepper spray and the officers' action to prevent Saunders from showering. Nor could they under the Policy Directive inasmuch as it requires that each grievance complain of only one issue.

15

Further, even if these grievances dated April 8, 2018, and April 10, 2018, respectively, did discuss the allegations against Kummer and Baisden, they were submitted more than one year after the alleged incidents that gave rise to this litigation. Their filing would contravene the Policy Directive's requirement that grievances be submitted "within fifteen (15) days of any occurrence that would cause [an inmate] to file a grievance." Policy Directive 335.00, at 5-6. Additionally, while grievance No. 18-MOCC-Q2-321 touches on the actions attributed to Kummer and Baisden and was appealed to the Commissioner,[2] it is dated April 10, 2018, which is also more than one year after the alleged incidents occurred in late February and early March 2017. The court accordingly concludes that grievance Nos. 18-MOCC-Q2-302, 18-MOCC-Q2-320, and 18-MOCC-Q2-321 do not satisfy the PLRA exhaustion requirement as effected by W. Va. Code § 25-1A-2 and Policy Directive 335.00.

Moreover, Saunders has produced no evidence to suggest that administrative remedies were unavailable. He has admitted that he has no evidence that prison personnel tampered with his mail. His affidavit avers that he complained through multiple grievances about mail interference, and while it is apparent

---

[2] It is noted that Saunders does not argue that grievance No. 18-MOCC-Q2-321 satisfies the exhaustion requirement.

16

that he made such complaints, neither they, nor the affidavit, establish that any interference actually occurred. And while his affidavit establishes that he appealed multiple grievances to the Commissioner, another ostensibly true point, he appears to have gotten responses on every appeal to the Commissioner that he initialed on the respective grievance forms.

This stands in stark contrast to the two timely grievances that substantively pertain to Saunders' allegations in this case, Nos. 17-MOCC-Q2-64 and 17-MOCC-Q2-81, which lack the plaintiff's initials in the spaces designated for appeals to the Commissioner. Absent any evidence to the contrary, the clear implication is that Saunders did not initial the spaces for appeals to the Commissioner inasmuch as he did not attempt to appeal them. This conclusion is significantly more plausible than his unsubstantiated theory that personnel were tampering with his mail to hinder a forthcoming civil action against them, particularly in light of the fact that he appealed one of these grievances, No. 17-MOCC-Q2-81, to the warden (but not the Commissioner) and received a response without incident or any indication of mail interference.

Inasmuch as Saunders failed to appeal grievance Nos. Nos. 17-MOCC-Q2-64 and 17-MOCC-Q2-81 to the Commissioner and there is no evidence of mail interference, the court finds that

17

the plaintiff has failed to exhaust available administrative remedies as required by the PLRA. Summary judgment will be entered in favor of the defendants.

IV.

Accordingly, it is ORDERED that the defendants' motion for summary judgment (ECF No. 51) be, and it hereby is, GRANTED. All claims asserted against defendants CO II John Kummer and Lt. Jimmie Baisden are dismissed without prejudice.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: April 26, 2021

John T. Copenhaver, Jr.
Senior United States District Judge